[716 NYS2d 7]

TABITHA COLON, on Behalf of Herself and All Other Persons Similarly Situated, Respondent-Appellant, v RENT-A-CENTER, INC., et al., Appellants-Respondents.

First Department, November 9, 2000

## APPEARANCES OF COUNSEL

*Leah Guggenheimer* of counsel (*Guy J. Velella, Seth R. Lesser* and *Marc Edelson* on the brief; *Bernstein Litowitz Berger & Grossmann, L. L. P., Velella, Velella, Basso & Calandra* and *Hoffman & Edelson,* attorneys), for respondent-appellant.

*Jay Cohen* of counsel (*Donald W. Hawthorne, Jeffrey L. Nagel* and *Julia L. Tarver* on the brief; *Paul, Weiss, Rifkind, Wharton & Garrison,* attorneys), for appellants-respondents.

## OPINION OF THE COURT

WALLACH, J.

This case calls upon us to scrutinize the Rent to Own Program Law (RTOPL), whereby the New York Legislature sought to regulate the conduct of retail businesses engaged in the leasing of furniture, appliances and consumer goods. In this sense, it is a matter of first impression at this appellate level.

This is a purported class action in which plaintiff is the lessee of various household goods from defendants, under standard-form rental-purchase agreements, subject to the provisions of the RTOPL (Personal Property Law, art 11, § 500 *et seq.*). Defendants, who are mega-enterprises in the retail leasing field with widespread interstate operations, sold the items under identical written leases, allegedly in full compliance with the statute.

RTOPL, which took effect in 1987 (L 1986, ch 792), regulates the merchandising of household furniture and appliances through the device known as a rental-purchase agreement. Under this scheme, the consumer contracts to rent the property for successive periods on the same terms, making payment in advance of each term. The arrangement can be terminated by the consumer at any time, upon return of the merchandise, without further obligation. The law even allows a consumer to reinstate the contract after missing scheduled payments (*see, Davis v Rent-A-Center*, 150 Misc 2d 403). A

maximum limit to the obligations imposed by lease is established by the statute at the outset. If the consumer has made all rental payments (the "total cost"), at that point he will acquire ownership of the item. "Total cost" cannot exceed twice the "cash price," which is defined as the price at which a merchant, in the ordinary course of business, would offer to sell the merchandise to the consumer for cash on the date of the rental-purchase agreement (§ 500 [2]). The consumer can also acquire ownership by exercising an "early purchase option," tendering the cash price less 50% of all previous rental payments. Should the consumer fail to return the merchandise for any reason after missing a payment, or should the property be lost or stolen, the consumer becomes liable in a sum equal to the early purchase option price.

Plaintiff rented merchandise under a six-year lease, ending in November 1997. In her complaint, plaintiff alleges numerous violations of the RTOPL, for which she seeks, *inter alia*, declaratory and injunctive relief, with particular focus upon the failure of defendants to set forth in their leases the effective interest rates involved in the transactions. In response, defendants emphasize that the statute itself imposes no such requirement. After joinder of issue and some discovery, both sides moved for summary judgment. Upon this core issue—the absence of interest disclosure in defendants' form leases—the IAS Court held that defendants' failure to disclose interest in their leases, and whether such omission constituted a violation of the statute, presented a factual issue for a jury to resolve. We reverse that central finding, so modify the order on appeal, and remand for a trial limited to the remaining claims asserted in the complaint.

Defendants submitted the views on "household credit" from a financial expert on the faculty of the Graduate School of Management at Purdue University, who opined that the leases at issue did not require any recital of interest because the rental transactions did not involve the advancement of a principal amount, as would be the case in the extension of credit. Since no debt was created, there was no forbearance of debt if the customer chose not to renew the agreement. All the disclosure a customer was entitled to, under the RTOPL, was a statement as to the total cost (allowing comparison between "cash price" and the cost of exercising an early purchase option), the amount and timing of rental payments, the amount and purpose of any nonperiodic charges or fees, and the conditions under which the consumer might exercise an early

purchase option or either party might terminate the lease. Defendants argued that in the absence of an extension of credit, there could be no charge for interest, obviating the necessity of disclosing an "effective interest rate" in the contract.

Plaintiff countered with the affidavit of an economist on the faculty at Yale Law School, who opined that the discontinuance of a debt or credit involving a transaction at a predetermined price, otherwise known as a "put" option, renders the agreement equivalent to an interest-based transaction. Thus, plaintiff's expert urged that in this respect, there is an extension of credit, calling for disclosure of the effective rate of interest. If nothing else, this expert concluded, such disclosure would aid the consumer in comparing the cost of the purchase option with the competitive price of the item on the open market.

Rental-purchase agreements are common throughout the United States, but as a practical matter, judicial decisions in other States are of little guidance here because such laws are not uniform in their requirements. The New York statute crafted a sufficiently comprehensive and detailed program that has not attracted a single amendment since its enactment 14 years ago. Section 501 refers, *inter alia*, to various charges and fees, and specifies the items that must be disclosed in a rental-purchase agreement. Nowhere in section 501—or elsewhere in article 11, for that matter—is the concept of "interest" referred to, despite the fact that the bill's legislative history reveals considerable debate on whether there should have been included a cap on—or indeed, any requirement to disclose—the effective interest rate in exercising the purchase option. Interest is defined elsewhere in our statutes (*e.g.*, General Business Law § 717 [4]), but that term is strikingly absent from the RTOPL.

The IAS Court was understandably beguiled by the way the parties had framed the issue of interest as one resolvable by expert opinion. Therein lies the error. As the late Judge Murray Gurfein noted in *Marx & Co. v Diners' Club* (550 F2d 505, *cert denied* 434 US 861), expert witnesses should not be called to offer opinion as to the legal obligations of parties under a contract; that is an issue to be determined by the trial court. Expert opinion as to a legal conclusion is impermissible. Likewise, the interpretation of a statute is purely a question of law, and is the responsibility of the court, not the trier of facts (*Measom v Greenwich & Perry St. Hous. Corp.*, 268 AD2d 156, 159), especially where legislative intent is called into question

(*Matter of Newark Val. Cent. School Dist. v Public Empl. Relations Bd.*, 83 NY2d 315, 320). Were we to follow the conclusion reached by the IAS Court, we would be soliciting a jury verdict as to the intent of the Legislature and the Governor in enacting RTOPL in its present form. Such a question cannot be left to the deliberations of a jury panel. Thus, so much of the complaint as sought a declaration of the effective rate of interest should have been dismissed.

This is not to say that plaintiff's remaining substantive claim of deceptive practices in the setting of an overly inflated cash price, in violation of General Business Law §§ 349 and 350, may not be viable. However, that *is* a matter for the trier of fact.

Accordingly, the order of the Supreme Court, Bronx County (Howard Silver, J.), entered August 31, 1999, which granted defendants' motion for summary judgment only to the extent of dismissing plaintiff's claims for punitive damages, and denied plaintiff's cross motion for summary judgment, should be modified, on the law, to the extent of additionally dismissing plaintiff's demand for an injunction that defendants reflect the "effective economic interest rate" on all rent-to-own transactions, and otherwise affirmed, without costs.

ROSENBERGER, J. P., NARDELLI, MAZZARELLI and LERNER, JJ., concur.

Order, Supreme Court, Bronx County, entered August 31, 1999, modified, on the law, to the extent of additionally dismissing plaintiff's demand for an injunction that defendants reflect the "effective economic interest rate" on all rent-to-own transactions, and otherwise affirmed, without costs.