[750 NYS2d 277]

Jᴏʜɴ Rᴜssᴏ, Appellant, v Fᴇᴅᴇʀ, Kᴀszᴏᴠɪᴛᴢ, Isᴀᴀᴄsᴏɴ, Wᴇʙᴇʀ, Sᴋᴀʟᴀ & Bᴀss, LLP, et al., Respondents.

First Department, November 21, 2002

**APPEARANCES OF COUNSEL**

*Brian Schochet* of counsel (*Toberoff, Tessler & Schochet, LLP,* attorneys), for appellant.

*Anne Patrice Richter* of counsel (*McManus, Collura & Richter, P.C.,* attorneys), for respondents.

**OPINION OF THE COURT**

TOM, J.

The issue raised in this appeal is whether plaintiff's legal malpractice claim against former counsel rests on bare speculation regarding what other counsel might have achieved and ignores the deficiency in the underlying personal injury action, so as to warrant dismissal of the malpractice claim.

The legal malpractice action derives from counsel's representation of plaintiff in an underlying personal injury action. Plaintiff, in the company of a friend, James McMahon, was in a Pergament store in the Centereach Mall, Long Island, on January 12, 1993 when he fell in the vicinity of the exit doors, about 50 to 80 feet away from the checkout counter that he had just left. He remembered that the area was well lit. From a conversation with McMahon, plaintiff subsequently concluded that he had tripped on a "throw rug" near the entrance. Plaintiff himself had not seen the rug before he fell. He remembered tripping, though, when his foot caught on something, though he did not see what it was. As he tripped, he hit a wall and then fell over backwards, and hit his head on the cement floor. He remembered the carpet was about eight feet by four feet, maroon colored with a black edge, and that it had not moved or slipped while he was on it. He did not recall whether it was during his first step or later steps that he fell. McMahon had indicated to him, though, that he believed that the turned-up or ripped edging of the carpet had caused the fall. McMahon related this to plaintiff when plaintiff was in the hospital. Plaintiff was unable to get names of witnesses. He had been to that Pergament store on prior occasions but had never noticed any problems with the carpeting.

McMahon testified at his own deposition that he had observed plaintiff trip on the carpet about six feet from the wall adjoining the doorway, at which time plaintiff first hit his head on the wall and then staggered backward and hit his head on the floor. When McMahon looked at the carpet, it was "up," so that he assumed that plaintiff had tripped on it. Although he saw plaintiff trip, he did not actually see plaintiff

trip on the rug. However, he did see the rug "all curled up" shortly afterwards. He described it as "folded over * * * curled up on top—the end of it was on top of it like two feet in * * * was folded over on top of the other mat." The rise was about three or four inches. About a minute had elapsed between the accident and this observation. Someone took photos about 10 minutes later, and during the interim, he had not observed anyone touch the rug. Specifically, he had not uncurled the rug himself.

Frank Pellegrino, a store employee who responded, took photos and filled out the accident report which is included in our record. Pellegrino indicated that no one had ever complained about the carpeting before, that although the carpet was not attached to the floor, it did not easily slide, that when he arrived, it was not bunched up (apparently consistent with the photos), that he had not moved the carpet, and that it was not torn in any manner. He also noted that the accident report reflected that plaintiff did not know what caused him to trip and that McMahon had surmised he tripped over the carpet.

The various defendants subsequently moved for summary judgment dismissing the complaint. They argued that there was neither actual nor constructive notice of the allegedly defective condition, that there was no evidence that defendants had created the condition, and that there was no evidence even indicating what condition had caused the fall. In opposition, plaintiff's counsel, present defendant law firm, submitted the affidavit of an engineer. The engineer stated his opinion that the floor mat had become "curled by engagement with plaintiff's foot or the door. The floor mat installation was improper and/or inadequate for the application in that it deflected upward in the course of normally anticipated service. * * * Good and accepted custom and practice for the installation and maintenance of a floor mat in a location such as an entrance/exit to a mall requires that the floor mat have safeguards, such as guides, stops, or velcro, or a device creating high friction engagement with the floor, to prevent the upward deflection or curling over."

Suffolk County Supreme Court granted defendants' motions and dismissed the complaint. The court, having reviewed the depositions, noted that plaintiff did not know what had caused the fall, that McMahon surmised that plaintiff had tripped over the rug, and that neither individual knew how long the rug had remained in that condition and that neither had given the owner prior notice. Addressing the argument that defen-

dant itself had created the defective condition, the court found no evidence of such. Reviewing the engineer's affidavit in the context of the claim that an unanchored carpet in and of itself creates a dangerous hazard, the court faulted the affidavit for failing to establish the carpet's thickness, composition, weight or age, factors which per se might establish unsuitability. In affirming, the Second Department (266 AD2d 369) found that neither plaintiff nor anyone else had actually seen what plaintiff had tripped over. The engineer's affidavit was not addressed.

Plaintiff then sued his attorneys (collectively defendant law firm) for legal malpractice on the basis that counsel's opposition to the summary judgment motion, including the engineer's affidavit, "[was] patently insufficient to oppose said motion * * *." The malpractice complaint faulted defendant-counsel for failing to "properly draft and submit an affidavit from an expert which demonstrates that expert's familiarity with good and accepted practice of installing and maintaining floor mats"; failing to obtain such an affidavit from another qualified expert; failing to conduct proper discovery; failing to sue all appropriate parties; and failing to properly investigate.

Defendant law firm moved for summary judgment dismissing the malpractice complaint. In opposition, and in support of his own cross motion for summary judgment, plaintiff submitted an affidavit from Max Toberoff, an attorney. Toberoff basically offered his opinion that there was competent circumstantial evidence that should have been presented that plaintiff tripped on an improperly placed and secured carpet, that the only evidence offered had been an affidavit by an expert that failed to set forth adequate qualifications regarding the foundation for the engineer's opinion, that another expert's affidavit should have been submitted, and that additional evidence was not submitted that would have avoided summary judgment.

In granting the motion under present review, the court noted that the gravamen of the motion in the personal injury action was that plaintiff could not demonstrate actual or constructive notice of the dangerous condition that caused him to fall. The court noted that plaintiff also relied on the claim that counsel had failed to utilize additional competent evidence to raise material issues of fact with reference to the engineer's affidavit. The court, though, found it to be "telling" that the Second Department had not even seen the need to address the issue of the expert's affidavit. Finding that plaintiff failed to establish that but for counsel's alleged negligence, he would have

obtained a favorable result in the underlying litigation, the court dismissed. Plaintiff appeals.

The basic rules for pleading and prosecuting a prima facie case in legal malpractice are well established. As we have often stated, an action for legal malpractice requires proof of the attorney's negligence, a showing that the negligence was the proximate cause of the injury, and evidence of actual damages (*Pellegrino v File*, 291 AD2d 60, *lv denied* 98 NY2d 606; *Prudential Ins. Co. v Dewey, Ballantine, Bushby, Palmer & Wood*, 170 AD2d 108, *affd* 80 NY2d 377; *Franklin v Winard*, 199 AD2d 220). In order to survive dismissal, the complaint must show that but for counsel's alleged malpractice, the plaintiff would not have sustained some ascertainable damages (*Pellegrino, supra*; *Franklin v Winard, supra*). A failure to establish proximate cause requires dismissal regardless of whether negligence is established. Notwithstanding counsel's purported negligence, the client must demonstrate his or her own likelihood of success; absent such a showing, counsel's conduct is not the proximate cause of the injury. Nor may speculative damages or conclusory claims of damage be a basis for legal malpractice (*Pellegrino, supra*). We have previously addressed malpractice claims by frustrated litigants by making clear that the "remedy relies on prima facie proof that [the client] would have succeeded" (*Price v Herstic*, 240 AD2d 151, 152; *Pellegrino, supra* at 63).

Defendant law firm filed and served a summons and complaint on behalf of plaintiff in the underlying action, participated in depositions, moved for and opposed summary judgment, and submitted an expert's affidavit as to the only causation that can be construed from plaintiff's own testimony and that of the only eyewitness. Plaintiff cannot fault counsel for failing to argue the summary judgment motion, but contends, in effect, that counsel should have done a better job. However, that is not the standard by which we are governed (*Hutt v Kanterman & Taub*, 280 AD2d 379, *lv denied* 96 NY2d 713). But even from a practical standpoint, counsel's performance was circumscribed by the evidence. Plaintiff and McMahon, in their deposition testimony, offered no evidence that any causative element other than the carpeting was at play, so that the failure to investigate other causation cannot be deemed negligent. Hence, counsel's theory focused on the carpeting. However, defendant owner's photographic and documentary evidence, supported by the testimony of its employee, seemingly eliminated plaintiff's theory. It is not our

task to second guess prior courts on this matter, but only to point out the evidentiary parameters of plaintiff's personal injury case.

Preliminarily, the fatal flaw in plaintiff's underlying personal injury case was that neither he nor his major witness could state on the basis of personal knowledge that a defective carpet caused the accident. This was mere surmise, and a legal theory of causation cannot be sustained on surmise. Rather, proximate causation is required. If this theory could have been predicated on a sound factual basis, though, then in this regard plaintiff bore two alternative burdens. First, plaintiff could have shown the defendants' actual or constructive notice. Since there is no credible indication of any such notice (see Benware v Big V Supermarkets, 177 AD2d 846; Grimes v Golub Corp., 188 AD2d 721), dismissal would have been required unless plaintiff could have shown that those defendants caused the defect. Plausibly, counsel pursued this latter line of reasoning and cannot be faulted for doing so. The putative defect, adduced in plaintiff's and McMahon's own deposition testimony, is that the edge of the carpet was rolled back a couple of feet and resulted in a three- or four-inch buckling. Apparently, this theory of causation was sharply undermined by contemporaneous photographic evidence. Again, it must be shown that the personal injury defendants caused this defect. We cannot fault counsel for failing to produce evidence that may never have existed.

Counsel did submit an expert's affidavit that sought to show that the carpet was improperly secured—a moot point if it could not be shown, preliminary, that the carpet caused the injury. The argument is basically that the expert's affidavit was insufficiently detailed. However, under these factual circumstances, the absence of details in the affidavit does not establish the negligence and causation required for the malpractice claim if the result would not have been different even with the inclusion of such details (23 Realty Assoc. v Zack, 255 AD2d 111). In any event, the Second Department, as noted by Justice Solomon, did not even address the engineer's affidavit, underscoring its marginal effect on the summary judgment motion.

Plaintiff, though, relies on the affidavit of another attorney, a supposed expert in this regard, to establish why counsel's strategy and performance were incompetent. Essentially, the affiant-attorney was offering a legal opinion as to what performance or absence thereof constitutes legal malpractice. But making those determinations is the function of a court. As we

recently pointed out in another case, "expert witnesses should not * * * offer opinion as to the legal obligations of parties * * *; that is an issue to be determined by the trial court. Expert opinion as to a legal conclusion is impermissible" (*Colon v Rent-A-Center, Inc.*, 276 AD2d 58, 61). An expert may not be utilized to offer opinion as to the legal standards which he believes should have governed a party's conduct (*Marx & Co., Inc. v Diners' Club Inc.*, 550 F2d 505, 509, *cert denied* 434 US 861). We do not rely on an attorney's affidavits to tell us what constitutes malpractice. Moreover, the affidavit offered here raises an additional concern. It is tinged with the sense that since the affiant would have done things differently, therefore the attorney being challenged was incompetent. Such a contest of strategies is easily reduced to a malpractice standard that impermissibly compares the defendant-attorney's choice of strategies with the afterthoughts later offered by plaintiff's now-favored attorney, for whom bias is a necessary concern, rather than measuring counsel's performance against the much more objective standard of the profession's commonly prevailing practices.

Accordingly, for these several reasons, the order of the Supreme Court, New York County (Jane Solomon, J.), entered May 9, 2001, which granted defendants' motion for summary judgment dismissing the complaint and denied plaintiff's cross motion for partial summary judgment, should be affirmed, without costs.

NARDELLI, J.P., ROSENBERGER, WALLACH and FRIEDMAN, JJ., concur.

Order, Supreme Court, New York County, entered May 9, 2001, affirmed, without costs.