**FTF Lending, LLC v Mavrides, Moyal, Packman & Sadkin, LLP**

2024 NY Slip Op 33115(U)

September 6, 2024

Supreme Court, New York County

Docket Number: Index No. 153620/2020

Judge: Margaret A. Chan

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: PART 49M

-------------------------------------------------------------------------X

FTF LENDING, LLC,

Plaintiff,

- v -

MAVRIDES, MOYAL, PACKMAN & SADKIN, LLP
and MATTHEW WEINBERGER,

Defendants.

-------------------------------------------------------------------------X

MAVRIDES, MOYAL, PACKMAN & SADKIN, LLP and
MATTHEW WEINBERGER

Third-Party Plaintiffs,

-against-

ROBERT THONY LAW, PLLC and ROBERT THONY,

Third-Party Defendants.

-------------------------------------------------------------------------X

| | |
|---|---|
| INDEX NO. | 153620/2020 |
| MOTION DATE | 03/18/2024 |
| MOTION SEQ. NO. | 006 |

**DECISION + ORDER ON MOTION**

Third-Party
Index No. 595619/2020

HON. MARGARET A. CHAN:

The following e-filed documents, listed by NYSCEF document number (MS006) 103, 104, 105, 106, 107, 108, 109, 110, 111, 112, 113, 114, 115, 116, 117, 118, 119, 120, 121, 122, 123, 124, 125, 126, 127, 128, 129, 130, 131, 132, 133, 134, 135, 136, 137, 138, 139, 140, 141, 142, 143, 144, 145, 146, 147, 148, 149, 150, 151, 152, 153, 154

were read on this motion to/for _____JUDGMENT - SUMMARY_____ .


    Plaintiff FTF Lending, LLC (FTF) brings this action against defendants Mavrides, Moyal, Packman & Sadkin, LLP (MMPS) and Matthew Weinberger (Weinberger together with MMPS, defendants), asserting a claim for legal malpractice arising out of defendants' representation of FTF in a loan transaction (the Loan Transaction) (NYSCEF # 1).[1] Before the court are (1) FTF's motion, pursuant CPLR 3212, for summary judgment on its legal malpractice claim, and (2) defendants' cross motion for summary judgment dismissing FTF's claim (NYSCEF #s 103, 130-131). For the following reasons, both motions are denied.

---

[1] On October 23, 2023, this action was consolidated with a related action, captioned *FTF Lending, LLC v. 2330 Dutch Broadway LLC et al.*, Index No. 655765/2019 (NYSCEF # 102).

**153620/2020 FTF LENDING, LLC vs. MAVRIDES, MOYAL, PACKMAN & SADKIN LLP**
**Motion No. 006**

**Page 1 of 10**

1 of 10

## Background

The following facts are drawn from the parties' Rule 19-a statements and the accompanying affidavits and exhibits submitted in connection with the parties' motions. They are undisputed unless otherwise noted.

### *The Loan Transaction and Post-Closing Discovery of Fraud*

FTF is a real estate and financial services company that provides short-term capital to real estate developers and investors who purchase and renovate residential properties (NYSCEF # 126 – Pltf 19-a ¶ 1; NYSCEF # 133 – Defts 19-a ¶ 86; NYSCEF # 104 – Rodak aff ¶ 3; NYSCEF # 136 – Draudt tr 9:22-10:5). As explained by FTF's Senior Vice President of Operations, Christopher Draudt, FTF considers itself a "hard money lender" and "lend[s] money based on the hard asset, or collateral real estate" securing a given loan (Draudt tr 9:21-10:9; *see also* Defts 19-a ¶¶ 63, 80).

On May 26, 2018, FTF and Dwayne A. Samuels executed a term sheet outlining the terms of a loan by FTF to Samuels's company, 2330 Dutch Broadway, LLC (2330 Dutch, and together with Samuels, Borrowers) (Pltf 19-a ¶ 2; NYSCEF # 145 – Term Sheet at 1). The Term Sheet contemplated a $375,000 loan (the Loan) in connection with a first-mortgage financing for a property located at 2330 Dutch Broadway, Elmont, NY 11003 (the Property) (Pltf 19-a ¶ 2; Rodak aff ¶¶ 4-5; NYSCEF # 145 – Term Sheet at 1). According to FTF's Chief Executive Officer, Matthew Rodak, FTF's financing was contingent on (1) Samuels transferring title to the Property to 233 Dutch, (2) the securing of a title insurance policy, (3) a closing protection letter, and (4) a first-mortgage lien on the Property (Pltf 19-a ¶ 10; Rodak aff ¶¶ 6-7). Consequently, as part of the Term Sheet, Samuels "acknowledge[d] that [FTF] must perform [its] 'Due Diligence' before a closing [could] occur" on the Loan (Term Sheet at 3-4; *see also* Defts 19-a ¶ 86; NYSCEF # 143 – Packman aff ¶¶ 8-9). Samuels also authorized FTF to "obtain a Consumer Credit Report and/or a Background Report" (Term Sheet at 6).

On or about May 30, 2018, although there was no formal engagement agreement, FTF retained MMPS to represent FTF in connection with the closing of the Loan (*see* Pltf 19-a ¶¶ 3-4; Rodak aff ¶¶ 8-9; Packman aff ¶ 5; NYSCEF # 105 at 1-2). That same day, FTF's Loan Coordinator, Laurie Ferrante, explained to Samuels's counsel, Robert Thony, that FTF was the lender working with Samuels on the financing of his investment real estate transaction," and she further introduced Weinberger, an associate practicing in MMPS's real estate practice group, as FTF's legal counsel (*see* Pltf 19-a ¶ 15; Rodak aff ¶¶ 10-11; NYSCEF # 105 at FTF00218-219). Also copied on this email was MMPS employee Alexandrea Lapka, who confirmed that MMPS would be "representing [FTF] in the above referenced transaction" and circulated MMPS's "opening checklist of items needed prior to closing" (*see* Pltf 19-a ¶ 11; Rodak aff ¶ 11; NYSCEF # 105 at 1-2). The checklist was prepared by MMPS and contained a list of seven "Legal Related Outstanding Items" to complete prior to closing, including various "Title Related Matters" (Pltf 19-a ¶ 12-13; NYSCEF # 105 at 3; NYSCEF # 113 – Packman tr 51:14-15).

Scott Packman, a member of MMPS, testified that "Lapka and potentially [] Weinberger" were responsible for "ensuring that each of [the checklist's] outstanding items [were] satisfied prior to the closing" (Packman tr 51:16-52:6; *see also* Pltf 19-a ¶ 14).

**153620/2020 FTF LENDING, LLC vs. MAVRIDES, MOYAL, PACKMAN & SADKIN LLP**
**Motion No. 006**

Page 2 of 10

Packman further testified that Lapka, who was a law clerk pending admission, (1) "handled the closing," (2) "drafted the loan documents," including the promissory note, mortgage, and guarantee, and (3) "performed [] due diligence," including "reviewing the title report" (Packman tr 14:3-4, 37:3-20, 42:7-43:6, 57:13-16). Packman also stated that Lapka would have, in general, been supervised by various attorneys at MMPS, including Weinberger and himself (*see id.* tr 33:7-19, 34:21-35:3). Weinberger largely confirmed the same, although he noted his role in the Loan Transaction "was limited in some way to only answering questions" (*see* NYSCEF # 112 – Weinberger tr 20:12-21:2, 37:3-24).

On June 8, 2018, Samuels provided to Thony a copy of an unmarked title report allegedly prepared by Fidelity National Title Insurance Company (Fidelity) (*see* Pltf 19-a ¶ 24, Defts 19-a ¶ 44; Rodak aff ¶ 19; Packman aff ¶¶ 14-15; NYSCEF # 147; NYSCEF # 107). Two days later, on June 10, 2018, Thony circulated to Lapka a copy of a purported marked-up title report and closing protection letter (Pltf 19-a ¶ 25; Defts 19-a ¶ 45; Rodak aff ¶20; Packman aff ¶ 14; NYSCEF # 146; NYSCEF # 108). Both the unmarked title report and marked-up title report (together, the Title Reports) contained a recorded deed evidencing Samuels's purported transfer of the Property to 2330 Dutch (Pltf 19-a ¶ 26; Defts 19-a ¶ 46; NYSCEF # 107 at FTF000599-600; NYSCEF # 108 at FTF000619-620).

By June 12, 2018, the Loan closed at MMPS's New York City Office, and 2330 Dutch executed a promissory note in an amount of $375,000 (Pltf 19-a ¶ 27; Rodak aff ¶ 22; NYSCEF # 109). Samuels, in turn, executed a personal guarantee of the promissory note (Defts 19-a ¶ 61; NYSCEF # 137 at FTF000675-682; *see also* Rodak aff ¶ 23). FTF then disbursed a total of $340,000 to 2330 Dutch, which represented approximately 60% of the value of the Property (*see* Defts 19-a ¶ 65; NYSCEF # 106 at 2; *see also* Draudt tr 41:6-12). Thereafter, on August 31, 2018, Thony provided a copy of a purportedly recorded mortgage (Defts 19-a ¶ 47).

Borrowers ultimately failed to make any payments that were due under the Loan's terms and, as a result, defaulted on the Loan (*see* Pltf 19-a ¶ 28; Defts 19-a ¶ 60; Rodak aff ¶ 23). Anticipating a potential foreclosure action, on June 30, 2019, FTF conducted a title search through Stewart Title (Rodak aff ¶ 24; NYSCEF # 110). Based on that search, FTF determined that the Title Reports were fraudulent (Pltf 19-a ¶ 31; Defts 19-a ¶ 48; Rodak aff ¶ 24; NYSCEF # 110). Specifically, FTF learned that, contrary to Borrowers' representations, (1) the Property was encumbered by numerous liens and judgments and was the subject of a pending foreclosure action in Nassau County; (2) Samuels had never transferred the Property to 2330 Dutch; (3) the "recorded" mortgage was never recorded with the Nassau County Clerk's Office; and (4) Borrowers never secured title insurance from Fidelity (*see* Pltf 19-a ¶ 25; Defts 19-a ¶¶ 49-52; NYSCEF # 110 at FTF000419-432).

FTF's decision to lend to 2330 Dutch was premised on the security it thought it had in the Property (Pltf 19-a ¶ 39; Rodak aff ¶ 18; NYSCEF # 115 – Kuclo tr 110:13-112:5). Had FTF known that 2330 Dutch was not the owner of the Property or that FTF would not have a first-priority mortgage on the Property after the closing, it would not have issued the Loan (Rodak aff ¶ 28). Such an interest, as Packman testified, would have given FTF the ability to foreclose on the Property upon Borrowers' default (Packman tr 49:4-9). But instead, given Borrowers' fraud, FTF was left without any security for the Loan (*see* Pltf 19-a ¶ 41).

**153620/2020 FTF LENDING, LLC vs. MAVRIDES, MOYAL, PACKMAN & SADKIN LLP**
**Motion No. 006**

**Page 3 of 10**

[* 3]

3 of 10

### The Purported Issues with the Title Reports

A review of Title Reports reveals that there were numerous errors establishing their fraudulent nature ahead of the Loan's closing (*see* Pltf 19-a ¶ 35; Defts 19-a ¶ 48). According to FTF's expert, Anita Delshad, the deed included in the Title Reports contained the following discrepancies: (a) the "Endorsement Cover Page" included three inconsistent recording "page" numbers; (b) the Deed was given three legally distinct names (i.e., Deed, Indenture, and Quit Claim Deed); (c) the deed, if legitimate, would have been a "Quit Claim Deed" indicating that Samuels had transferred all of his rights, title, and interest in the Property, without any warranties, to 2330 Dutch, yet it did not include the required quit claim language; (d) the deed did not include reference to a prior deed; and (e) the deed was to be "returned by mail to The Law Center" rather than 2330 Dutch's attorney's offices (NYSCEF # 117 – Delshad aff ¶¶ 16, 24 & exhs B & C; Pltf 19-a ¶ 36). Delshad further observed additional anomalies with the Loan Transaction, namely that no one from Fidelity was involved in the Loan Transaction or attended the closing (Delshad aff ¶¶ 18-20). Instead, Thony apparently acted as title closer by representing himself as an agent attorney for Fidelity (*id.* ¶ 22).

In Delshad's opinion, given the importance of title reports in real estate transactions, defendants should have identified the discrepancies in the Title Reports after a judicious review (*see* Delshad aff ¶¶ 12, 14, 17, 24). She further opines that defendants should have been in communication with Fidelity and should not have allowed Thony to act as title closer or otherwise have trusted him to record the mortgage or deliver the loan policy (*see id.* ¶¶ 18-19, 21-26). Separately, Delshad avers, defendants failed to adequately supervise Lapka, who was managing the Loan Transaction (*see id.* ¶¶ 28-33).

Packman retorts that the information provided to MMPS gave the appearance of an ordinary real estate closing transaction, and thus, there was no reason to suspect anything fraudulent (Packman aff ¶ 16).[2] Nevertheless, Weinberger testified that Lapka, in her review of the title report, "should have noticed" the discrepancies in the Title Reports (Weinberger tr 76:5-11).

### Scope of Responsibilities in Connection with the Loan Transaction

The parties disagree as to whose responsibility it was to assess the validity of the information contained in the Title Reports. In support of FTF's position, Rodak affirms that FTF understood and expected that MMPS, in representing FTF in connection with the Loan's closing, would draft and review all documents necessary to effectuate the closing and ensure (by, among other things, reviewing the Title Reports) that 2330 Dutch owned the Property and that FTF was secured by a first-priority mortgage on the Property (Rodak aff ¶¶ 14-16, 21). This understanding was corroborated by FTF employee Peter Kuclo, who testified that his "understanding [was] that MMPS was engaged or hired to represent FTF as a lender in the closing of" the Loan, "to ensure [FTF] had a secured first lien position," and to "review all of the documents related to the loan transaction" (Kuclo tr 24:13-23, 125:3-126:18). MMPS's engagement encompassed "the title work and the review of title,"

---

[2] Packman also ascribes blame to Thony, who did not "make any attempt to assure or identify the accuracy or authenticity of any of the documents" that were provided to MMPS (Defts 19-a ¶¶ 72-73; Packman aff ¶ 16; *see also* Thony tr 32:5-36:12, 42:4-14).

**153620/2020 FTF LENDING, LLC vs. MAVRIDES, MOYAL, PACKMAN & SADKIN LLP**
**Motion No. 006**

Page 4 of 10

which Kuclo described as "[t]he most important piece" of MMPS's representation (*see id.* at 31:17-22, 33:8-14). Ferrante similarly understood MMPS's role in the Loan Transaction was to "protect[] FTF's interest," "ensure that FTF had a first lien position," and provide "color or detail if . . . any [] documents did not meet [MMPS's] standards and [] requirements for FTF" (*see* NYSCEF # 116 – Ferrante tr 60:15-63:18).

FTF also points to the depositions of Packman and Weinberger in support of its position. Packman, for example, testified that he understood MMPS's legal duty was to "properly produce enforceable, recordable, and useful loan documents, to review the title report . . . and to make sure that all documents to record a first-mortgage lien against the subject property were handed to a title company for recording" (*see* Packman tr 39:14-23, 86:12-18). Weinberger similarly testified that FTF typically sent MMPS deals in which FTF sought to acquire a "first-priority interest" mortgage (*see* Weinberger tr 22:13-21, 40:2-15).

Conversely, defendants maintain that MMPS had no duty to investigate, detect, eliminate, or rectify fraudulent activity for FTF (*see* Defts 19-a ¶¶ 14, 16, 54; Packman aff ¶¶ 11-12). Instead, defendants aver, any information gathering about Borrowers, as well as any corresponding review of public records and reports, would have been performed by FTF (*see* Defts 19-a ¶¶ 54, 56[I]; *see also* NYSCEF # 149 – Rodak Reply aff ¶¶ 6-10; Kuclo tr 32:4-24). Defendants, in turn, point to various information that they claim were available to FTF regarding Samuels's financial history, his checkered criminal history, and potential liens on the Property (*see* Defts 19-a ¶¶ 55-56, 87-88). For its part, FTF does not dispute that, prior to closing, it identified certain details regarding Samuels through a TransUnion credit report and background check, including (i) the existence of a prior lien on the Property with a notice of pendency dated as of April 27, 2017, and a recording date of April 21, 2017, (ii) Samuels's credit score of 536 out of 800, and (iii) various delinquent accounts and foreclosures (*see* Defts 19-a ¶¶ 56[A], [D]-[E], 57; Rodak Reply aff ¶¶ 6-10). FTF does, however, dispute that it knew of Samuels's criminal history prior the Loan's closing given the lack of any disclosure in either Samuels's credit report or background check (Rodak Reply aff ¶¶ 4-5, 9-10; NYSCEF # 151).

In further support of their position, defendants offer the expert report of John J. Hughes, Jr., Esq. (Hughes) (NYSCEF # 135 – Hughes Report). Hughes opines that MMPS's duties with regard to its review of the title report were limited to "verify[ing] the lender's name, loan amount, property address, borrower's name, dates, exceptions, violations, check[ing] that tax searches do not show violations, and [] confirm[ing] that the title is what is seen in the transaction to be recorded" (*see id.* ¶¶ 22-26, 28-29). These duties notably included "produc[ing] enforceable, recordable and useful loan documents" and "review[ing] the title report, to make sure that all documents to record a first-mortgage lien against the subject property were handed to a title company for recording" and had "no blemishes such as violations or judgments" (*see id.* ¶¶ 22, 28). Hughes separately opines that FTF "failed to meet the standards of an ordinary prudent lender" by disregarding its own underwriting requirements in the due diligence process (*id.* ¶¶ 13-18 & Ex. U). Those requirements included "declin[ing] to offer funding" to a borrower that did not meet certain "qualifications" such as having a "clean criminal background" and "a clear credit report with no major delinquencies, bankruptcies, foreclosures or other negative indicators" (*see id.* at Ex. U).

**153620/2020 FTF LENDING, LLC vs. MAVRIDES, MOYAL, PACKMAN & SADKIN LLP**
**Motion No. 006**

**Page 5 of 10**

5 of 10

*Procedural History*

On October 2, 2019, FTF commenced an action before the New York State Supreme Court, New York County, against Borrowers and Thony alleging various causes of action related to the alleged misrepresentations made during the Loan Transaction (*see FTF Lending, LLC v 2330 Dutch Broadway LLC et al.*, Index No. 655765/2019 – the First Action). Then, on May 29, 2020, FTF commenced this action against MMPS and Weinberger in relation to its representation of FTF in the Loan Transaction (*see* NYSCEF # 1 – the Second Action). MMPS subsequently filed a third-party complaint against Thony and his firm seeking contribution and indemnification if FTF recovered damages against MMPS (NYSCEF # 9).

On September 20, 2020, FTF obtained a default judgment against Borrowers in the First Action (*see* NYSCEF # 102). On November 30, 2021, after the Note of Issue was filed in the First Action, the court denied FTF's motion for summary judgment against Thony (*id.*). Meanwhile, in the Second Action, defendants moved to dismiss the complaint, while Thony and his firm moved to dismiss the third-party complaint (*see* NYSCEF #s 14, 19). On May 4, 2021, the court denied in part and granted in part both motions, dismissing FTF's claims for breach of contract, negligence, and disgorgement/restitution, and dismissing defendants' third-party claims for common law indemnification (NYSCEF #s 41-42). The First Department affirmed this decision on May 3, 2022 (NYSCEF # 76).

On October 23, 2023, the First and Second Actions were consolidated under the Second Action's index number, and on October 31, 2023, FTF filed a Note of Issue in the Second Action (NYSCEF #s 101-102). FTF then moved for summary judgment on December 28, 2023, and defendants cross moved on January 16, 2024 (NYSCEF #s 103, 130).

## Discussion

A party moving for summary judgment must make a prima facie showing that it is entitled to judgment as a matter of law (*see Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]). Once that showing is made, the burden shifts to the party opposing the motion to produce evidentiary proof, in admissible form, sufficient to establish the existence of material issues of fact which require a trial of the action (*see Zuckerman v City of New York*, 49 NY2d 557, 562 [1980]). On a motion for summary judgment, facts must be viewed in the light most favorable to the non-moving party *(see Vega v Restani Constr. Corp*, 18 NY3d 499, 503 [2012]).

In its motion, FTF argues that it established its entitlement to summary judgment on its legal malpractice claim (NYSCEF # 127 –MOL at 8-20; NYSCEF # 153 –Reply at 2-13). FTF first contends that MMPS had a duty to ensure that FTF was secured by a first-lien mortgage in the Loan Transaction, including by reviewing the Title Reports (*see* MOL at 8-10; Reply at 2-5). MMPS, in turn, breached that duty by failing to notice fraudulent nature of the deed in the Title Reports and, as a result, that 2330 Dutch did not own the Property (MOL at 10-17; Reply at 2-6). FTF next contends that defendants' negligence is the proximate cause of its damages because it would not have agreed to the Loan if it was aware that 2330 Dutch was not the owner of the Property (*see* MOL at 17-20; Reply at 6-8). FTF continues that it only extended the Loan because it believed it would have a security interest in the Property, which defendants admittedly failed to ensure (*see id.*).

**153620/2020 FTF LENDING, LLC vs. MAVRIDES, MOYAL, PACKMAN & SADKIN LLP**
**Motion No. 006**

**Page 6 of 10**

6 of 10

[* 6]

Defendants oppose FTF's motion and cross move for summary judgment dismissing FTF's legal malpractice claim. In support, defendants primarily aver that they had no duty to investigate Samuels or detect any fraud during the Loan Transaction (NYSCEF # 132 – Opp at 9-12). Rather, defendants assert, any due diligence of Borrowers should have been performed by FTF, and, at any rate, FTF fails to present any admissible evidence indicating that defendants had reason to believe there was potential fraud to investigate (*see id.* at 11-12). Defendants next contend that FTF failed to establish proximate causation because (1) FTF's damages arise from Borrowers' failure to repay the Loan rather than any purported failure to identify fraud, and (2) FTF bore the responsibility of reviewing the Title Reports and, as part of its business decision to extend the Loan, it ultimately approved the Loan with prior knowledge of issues with Borrowers and the Property (*id.* at 12-16).

In an action for legal malpractice, a plaintiff must establish "(1) that the attorney was negligent; (2) that such negligence was a proximate cause of plaintiff's losses; and (3) proof of actual damages" (*Global Bus. Inst. v Rivkin Radler LLP*, 101 AD3d 651, 651 [1st Dept 2012], quoting *Brooks v Lewin*, 21 AD3d 731, 734 [1st Dept 2005]). Conversely, a defendant seeking to dismiss a legal malpractice claim on summary judgment has the "burden to demonstrate that the plaintiff would be unable to prove one of the essential elements of [its] claim" (*Aur v Manhattan Greenpoint Ltd.*, 132 AD3d 595, 595-596 [1st Dept 2015]).

To satisfy the first element, a plaintiff must establish that the attorney's conduct "fell below the ordinary and reasonable skill and knowledge commonly possessed by a member of the profession" (*Bernstein v Oppenheim & Co.*, 160 AD2d 428, 430 [1st Dept 1990]). As for the second element, proximate causation, a plaintiff must establish that "'but for' the attorney's negligence," it would not have sustained damages (*Nomura Asset Capital Corp. v Cadwalader, Wickersham & Taft LLP*, 26 NY3d 40, 49-50 [2015]; *Ulico Cas. Co. v Wilson, Elser, Moskowitz, Edelman & Dicker*, 56 AD3d 1, 10 [1st Dept 2008] [plaintiff must establish that "'but for' the attorney's negligence' the plaintiff would have prevailed in the matter or would have avoided damages"]). And for the third element, a plaintiff must demonstrate that it "sustained some ascertainable damages" (*see Russo v Feder, Kaszovitz, Isaacson, Weber, Skala & Bass, LLP*, 301 AD3d 63, 67 [1st Dept 2002]).

Here, FTF has established the first element of its legal malpractice claim. At the outset, FTF has marshalled sufficient evident establishing that FTF had a duty to properly review the title report as part of its representation of FTF in the Loan Transaction. For example, FTF's employees had understood and expected that MMPS would (1) draft and review all documents necessary to effectuate the Loan's closing, including the Title Reports, (2) ensure that 2330 Dutch owned the Property, and (3) ensure that FTF was secured by a first-priority mortgage on the Property (*see* Rodak aff ¶¶ 14-16, 21; Kuclo tr 24:13-23, 31:17-22, 33:8-14, 125:3-126:18; Ferrante tr 60:15-62:12). Packman and Weinberger,[3]

---

[3] Defendants contend that Weinberger's deposition testimony cannot be used against MMPS because there is no evidence that he was authorized to speak on MMPS's behalf (*see* Opp at 18-19). This objection is without merit. Weinberger was, at all relevant times, an associate of MMPS performing legal services on behalf of MMPS as part of the Loan Transaction (*see* Packman aff ¶ 17; NYSCEF # 118 ¶ 4; NYSCEF # 119 ¶ 1). Furthermore, not only is Weinberger a named defendant, but at the time of his deposition, Weinberger was a partner at MMPS and thus an agent of the firm (*see*

**153620/2020 FTF LENDING, LLC vs. MAVRIDES, MOYAL, PACKMAN & SADKIN LLP**
**Motion No. 006**

**Page 7 of 10**

[* 7]

effectively corroborated FTF's understanding by testifying that the responsibility of lender's counsel was to "properly produce enforceable, recordable, and useful loan documents" and "to review the title report" (*see* Packman tr 39:14-23, 42:7-43:6, 57:13-16, 86:12-18; Weinberger tr 22:13-21, 40:2-15).

FTF has further demonstrated that defendants breached that duty through their negligent conduct. As the record makes clear, the Title Reports were riddled with indicia of fraud—a fact that was only discovered by FTF after the Loan's closing (*see* Pltf 19-a ¶¶ 25, 31; Defts 19-a ¶¶ 48-52; Rodak aff ¶¶ 24-25). According to FTF's expert, these discrepancies, as well as other anomalies with the Loan Transaction in general, should have, at minimum, caused defendants to have suspicion as to veracity of the documents that had been provided Borrowers and, in turn, triggered additional review, particularly given the importance of the title report in a typical real estate transaction (*see* Delshad aff ¶¶ 12, 14, 17, 16, 18-24 & exhs B & C). Yet neither defendants nor their legal staff identified or flagged any issues with the Title Report to FTF prior to the Loan's closing (*see e.g.*, Packman aff ¶ 16). This failure to identify issues in the Title Report was seemingly accentuated by defendants' lack of supervision over Lapka in her management of the Loan Transaction. Indeed, as Weinberger testified, she "should have noticed" the discrepancies in the Title Reports (*see* Weinberger tr 76:5-11). All told, these facts, considered in their totality, provide a sufficient basis to conclude that defendants' representation of FTF fell below the ordinary and reasonable skill and knowledge commonly possessed by members of the profession (*see Benitez v United Homes of N.Y., LLC*, 142 AD3d 867, 867 [1st Dept 2016] [plaintiff made a prima facie showing of negligence where defendant "fail[ed] to advise that the subject property lacked a certificate of occupancy, fail[ed] to advise of the risk of funding the loan under these circumstances, and fail[ed] to confirm that plaintiff" met a condition of the loan]).

In opposition, defendants fail to demonstrate the existence of material issues of fact on the issue of negligence or that FTF cannot otherwise meet this element of its claim. Defendants' primary contention is that it had no duty to investigate, detect, eliminate, or rectify fraudulent activity or to otherwise be a guarantor of any particular result for FTF (*see* Defts 19-a ¶¶ 14, 16, 30, 54; Packman aff ¶¶ 11-12). Defendants' self-serving attempt to narrow the scope of their duties are, however, belied by essentially unrefuted testimony in the record establishing that defendants were, in fact, responsible for ensuring FTF's first-priority interest in the Property by, among other things, reviewing the title report (*see* Kuclo tr 24:13-23, 125:3-126:18; Packman tr 39:14-23, 86:12-18). The opinions set forth in the Hughes Report regarding defendants' purported duties do not alter this conclusion. In fact, the Hughes Report seemingly corroborates the above conclusions by opining, based on his review of the record, that defendants had an obligation to "produce enforceable, recordable and useful loan documents" and "to review the title report" (*see* Hughes Report ¶¶ 22, 28).

Turning to the issue of proximate causation, FTF has made prima facie showing that defendants' negligence was the "but for" cause of FTF's damages. As various FTF employees have affirmed and/or testified, FTF's decision to lend to Borrowers hinged on the security it felt it had in extending the Loan (*see* Pltf 19-a ¶ 39; Rodak aff ¶¶ 18, 28; Kuclo tr 110:13-

---

Weinberger tr 12:12-15). It was therefore appropriate for FTF to rely on Weinberger's deposition testimony in support of its motion (*see* CPLR 3112[a]).

**153620/2020 FTF LENDING, LLC vs. MAVRIDES, MOYAL, PACKMAN & SADKIN LLP**
**Motion No. 006**

**Page 8 of 10**

[* 8]

112:5; *see also* Packman tr 49:4-13). However, because the Loan Transaction did not, in fact, result in FTF obtaining a first-priority interest the Property, FTF was left without security for the Loan (Pltf 19-a ¶¶ 25, 41; Defts 19-a ¶¶ 49-52; Rodak aff ¶ 25; Packman tr 49:10-13). This was, of course, the precise security interest that both parties understood that defendants were working to secure through their review and approval of the Loan Transaction's documents (*see* Rodak aff ¶¶ 14-16, 21; Ferrante tr 60:15-62:12; Packman tr 39:14-23, 86:12-18). Yet, despite the obvious errors in the Title Reports, defendants' review failed to uncover any issues with the Title Reports or otherwise result in reasonable assurances that FTF would be protected in the event of a default following the Loan's closing (*see* Delshad aff ¶¶ 12-27; Packman aff ¶ 16). A trier of fact, when presented with this evidence, could reasonably conclude that "but for" defendants' failure to identify and advise on these issues, FTF would have avoided entering into the Loan or otherwise haven taken remedial steps to protect itself in extending the Loan.

Nevertheless, summary judgment in FTF's favor is not warranted.[4] The record undoubtedly supports a conclusion that defendants had a duty to properly review the Title Reports and ensure FTF's security interest in the Property. But there is also evidence in the record that FTF had its own due diligence obligations as part of the Loan Transaction (*see* Term Sheet at 3-4; Defts 19-a ¶ 86; Packman aff ¶¶ 8-9). It was through this diligence that FTF seemingly obtained the credit reports and background checks identifying certain details about Samuels's checkered financial history and potential liens/foreclosure actions on the Property (*see* Defts 19-a ¶¶ 56[A], [D]-[E], 57; Rodak Reply aff ¶¶ 6-10). Yet, despite being on notice of these issues—which seemingly conflicted with its own underwriting requirements for approving borrowers (*see* Hughes Report Ex. U)—FTF nevertheless approved the Loan. Presented with this evidence and testimony, a trier of fact could determine that, notwithstanding defendants' negligent conduct, the proximate cause of FTF's losses following Borrowers' default was its own deficient diligence efforts (*cf. Garten v Shearman & Sterling LLP*, 102 AD3d 436, 437 [1st Dept 2013] [affirming dismissal of complaint on summary judgment where defendant established that plaintiff's losses were caused by a borrower's "poor financial condition" and plaintiff's "misjudgment of risk," rather than defendant's failure to prepare and procure documents necessary to provide plaintiff with a first-priority security interest]). As a result, although a close call, defendants proffered just enough evidence in admissible form to create a material issue of fact as to proximate causation.

In sum, although FTF has established defendants' negligence, material issues of fact on the issue of proximate causation preclude summary judgment. Accordingly, both motions are denied.

As to defendants' remaining bases for dismissing FTF's claims (Defts' Opp at 3-9, 19-23), defendants' contentions are without merit and are dismissed. *First*, defendants' argument that plaintiff's claims are time-barred ignores that the three-year statute of limitation period begins to run when the alleged malpractice occurs (*see Shumsky v Eisenstein*, 96 NY2d 164, 166 [2001]). Here, the alleged malpractice action accrued on June 12, 2018, i.e., the Loan's closing date, and thus FTF had to file its action by no later than June 12, 2021 (Defts 19-a ¶ 27). This action was commenced on May 29, 2020. *Second*, defendants contend that FTF's claim against Weinberger must be dismissed under the

---

[4] And there is likewise no basis to grant defendants' cross motion for summary judgment.

**153620/2020 FTF LENDING, LLC vs. MAVRIDES, MOYAL, PACKMAN & SADKIN LLP**
**Motion No. 006**

**Page 9 of 10**

principle of respondeat superior. The record, however, is clear that Weinberger was the supervising attorney for the Loan Transaction (NYSCEF # 114 – Lapka tr 54:25-55:2; Packman tr 33:7-19, 34:21-35:3). Furthermore, as FTF notes, its claim is not premised on a theory vicarious liability, and, regardless this court has already determined that Weinberger can be subject to personal liability to the extent he acted negligently while representing FTF (*see* NYSCEF #s 41, 70; *see also FTF Lending, LLC v Mavrides, Moyal, Packman & Sadkin, LLP*, 205 AD3d 414, 415 [1st Dept 2022] [holding that plaintiffs could maintain malpractice claim against Weinberger and that dismissal was not warranted under "the common-law doctrine of respondeat superior"]). *Finally,* defendants aver that FTF failed to mitigate damages. This issue, however, presents a question of fact regarding damages that should not be resolved until the issue liability is resolved.

## Conclusion

For the foregoing reasons, it is hereby

ORDERED that plaintiff's motion for summary judgment and defendants' cross motion for summary judgment are both denied; and it is further

ORDERED that this case is referred to the **Alternative Dispute Resolution Program** and the parties are to contact the ADR office at adr-1jd@nycourts.gov, with notice to this court by letter, within twenty days of the date of this order; and it is further

ORDERED that defendants shall serve a copy of this order with notice of entry upon plaintiff and the Clerk of the Court within ten days of the date of this order.

This constitutes the Decision and Order of the court.

| 09/06/2024 | | |
| --- | --- | --- |
| DATE | | MARGARET A. CHAN, J.S.C. |

| CHECK ONE: | | CASE DISPOSED | | X | NON-FINAL DISPOSITION | |
| --- | --- | --- | --- | --- | --- | --- |
| | | GRANTED | X DENIED | | GRANTED IN PART | OTHER |
| APPLICATION: | | SETTLE ORDER | | | SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | X REFERENCE |

153620/2020 FTF LENDING, LLC vs. MAVRIDES, MOYAL, PACKMAN & SADKIN LLP
Motion No. 006

Page 10 of 10

10 of 10