(96 App. Div. 256.)

LINDEN v. THIERIOT et al.

(Supreme Court, Appellate Division, First Department.   July 13, 1904.)

1. PLEADING—PROOF—VARIANCE.

An allegation that defendant's testator received certain shares of stock as a bailee to sell for plaintiff under a guaranty to obtain a certain price per share is not fatally variant from evidence showing that intestate purchased the stock at the same price.

2. SAME—EVIDENCE—SUFFICIENCY.

In an action against an executor on a contract alleged to have been made by testator to receive certain shares of stock from plaintiff, and sell them at a certain price, evidence *held* to justify submission to the jury of the issue as to the existence of the agreement, and as to whether plaintiff had turned over the stock to testator.

3. SAME—BOOKS OF ACCOUNT—RES GESTÆ.

Plaintiff alleged that defendant's testator had received from her 200 shares of certain stock, for which he guarantied to obtain a certain price on sale of same, but for which she had received nothing.  It was admitted that plaintiff still had 200 shares of the same stock, and the books of testator were admitted in evidence, showing entries with respect to the 200 shares which plaintiff still had, but not the 400 shares, and containing no other entries or transactions with the plaintiff; and the accountant testified that he did not find in any of the books any entry other than as to the 200 shares still held by plaintiff.  *Held*, that these entries were not admissible as part of the res gestæ, since they were made without plaintiff's knowledge, and also because they related, not to the shares in dispute, but to the 200 shares which it was admitted plaintiff still held.

4. SAME—DECLARATIONS AGAINST INTEREST.

Neither were they admissible as declarations against interest.

5. SAME—PREJUDICIAL EFFECT.

On an issue as to whether defendant's testator had received from plaintiff certain shares of stock to sell at an agreed price, the admission of testator's books, showing other transactions between the parties, but containing no record of the delivery of the stocks in question, was prejudicial error.

Appeal from Trial Term, New York County.

Action by Emily Linden against Ferdinand M. Thieriot and others, as executors of Peter Marie, deceased.  From a judgment for defendants and from an order denying a motion for a new trial, plaintiff appeals.  Reversed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, O'BRIEN, and LAUGHLIN, JJ.

Frederick R. Kellogg, for appellant.
Charles E. Hughes, for respondents.

O'BRIEN, J.  The plaintiff sues to recover of the executors of Peter Marie, deceased, the value of certain securities alleged to have been delivered to him in his lifetime, and not returned, and as to some of which he guarantied her a certain sum.  Three causes of action are stated:  First, to recover the sum of $8,000, which the plaintiff claims the testator guarantied would be the proceeds of 200 shares of stock of the Retsoff Mining Company, which she delivered to him; second, to recover the sum of $6,500, the value of 100 shares of Amal-

gamated Copper Company stock, alleged to have been delivered by the plaintiff to him to be sold by him; and, third, to recover the sum of $13,900, the proceeds of the sale of 6 bonds of the Chicago Gaslight Company and 8 bonds of the Retsoff Mining Company, alleged to have been delivered to him by the plaintiff.

There are two serious questions presented upon this appeal: The first is whether with respect to each of the three causes of action the plaintiff made out a prima facie case, entitling her to go to the jury; and the second, whether, assuming that such a case was made out as to one or all of the three causes of action, the rulings which admitted in evidence the checkbook, and the testimony relating to it, and to the journal and ledger, of Peter Marie, deceased, were proper. If the first question can be answered in the negative, then it would follow that the plaintiff was in no way injured by testimony admitted, no matter how incompetent it may have been. We are therefore required to take up the causes of action, and refer to the facts which were produced to support them.

The first cause of action relates to 200 shares of the common stock of the Retsoff Mining Company. With respect to this stock, it was claimed that Mr. Marie advised the plaintiff to change the investment, and that she delivered the shares to him upon his promise that he would sell or exchange them, and that he would guaranty to her that the proceeds should not be less than $8,000, which he would reinvest for her account in other securities. In the bill of particulars the plaintiff states that she originally received these shares from Mr. Marie in 1895, and that the agreement alleged in the complaint was made between September 1 and December 1, 1901; the delivery of the stock having been made shortly thereafter by the plaintiff personally. The evidence to support this cause of action, as amplified by the bill of particulars, is very unsatisfactory; there being no memorandum of any kind in writing that Mrs. Linden ever had 400 shares of common stock, or shares other than the 200 which are now in her possession. The only verbal testimony on this subject is that given by her husband, who testified that after June, 1895, he saw in his wife's possession 400 shares of Retsoff common, and 8 bonds of Retsoff Mining Company, and some bonds of Chicago Gaslight & Coke Company, which latter are the bonds upon which the claims are made in the third cause of action. This testimony of the husband as to having seen 400 shares in her possession after June, 1895, is all there is in the case which definitely tends to prove that the plaintiff had 400 shares. And it will be noticed that the time which he fixes is some years prior to the date alleged by the plaintiff as the time when she made the agreement with Mr. Marie with reference to these shares. We say advisedly that this is the only testimony which definitely bears upon the plaintiff ever having had 400 shares, because, while the husband testifies as to conversations which he overheard between his wife and Mr. Marie about Retsoff stock, such conversations, as well as the letters of Mr. Marie upon the same subject, relate only to 200 shares of Retsoff which he held of hers, and about which there was no dispute, and there is nothing which in any definite manner shows that there

were any other 200 shares.  Thus with respect to the more important of these conversations, which the husband places in August, 1902, as having taken place at his residence, he testifies:

"Mr. Marie said: 'The 200 shares of the Retsoff which I have of yours, and which I took and bought of you at 40, and the 100 shares of Amalgamated Copper, which I can sell for 65, making $14,500, I will buy for you, I think, 100 shares of Pennsylvania Steel preferred and 100 shares of American. Smelting."

And in the letter of September 29, 1902, written by Mr. Marie to the plaintiff, and which the husband testified was a letter confirming the August conversation, Mr. Marie, among other things, writes:

"Will you let me know when and on what dates you got your dividends on the Retsoff in 1901 and the total for the year and when in 1902 and the total so far for 1902?  *  *  *  Also mention the same about Copper—How much you got from the Company and how much from me and the dates.  *  *  * If I can get you a solid total investment of $2,600 it is all I at present can look forward to.  I think when money gets easier of exchanging your 200 Retsoff which has no market value for 100 Penn. Steel, prfd., paying 7% and 100 copper for some steady 7% say 100 shares American Smelting 7% prfd.  The Penn. steel prfd. is quoted at 100½ bid 101 asked.  The Smelting prfd. about 98.  The exchange will cost me from $5,000 to $5,500 estimating Retsoff at 40 and copper 65.  Consult your business friends and see if you can learn anything about these investments.  If I get better I shall wait until the present pressure of money is over and we get good returns for our large crops in November."

There was no evidence that the plaintiff had been receiving through Mr. Marie dividends on the Retsoff stock in 1901 and 1902, other than the 200 shares which stood in his name, and which concededly belonged to the plaintiff.  As stated, therefore, the evidence in support of the plaintiff's first cause of action is meager and unsatisfactory. Not only is there no evidence of plaintiff's ever having given Mr. Marie any 200 shares of the Retsoff stock in addition to the 200 shares which stood in his name, but the proof is equally unsatisfactory in establishing the agreement of guaranty with respect thereto which is alleged.  The most that can be said is that the evidence might justify the inference that Mr. Marie purchased 200 shares of Retsoff from the plaintiff at $40 a share, which, in form, at least, is a variance from the agreement alleged—that he took the stock as bailee, having guarantied that she should receive therefor $40 a share.  The variance, however, is not serious or fatal; and, taking these patches of evidence, we are inclined, though with some hesitation, to think that there was enough to require the submission of the first cause of action to the jury, and had they, on this evidence alone, found for the defendant, we should not disturb the verdict.

What has been said with respect to the character of the proof as to the first cause of action is equally applicable to the evidence offered in support of the second and third causes of action, which related to the 100 shares of Amalgamated Copper and the bonds, and as to them, also, our conclusion is that the jury should determine the issues presented.

If, however, evidence that was incompetent, and which might affect injuriously the plaintiff's rights was admitted, then we cannot say that the verdict in defendants' favor upon the three causes of action was

the result of the jury's considering alone the evidence adduced by the plaintiff. This brings us, therefore, to the second question—as to the competency of the evidence with respect to the checkbooks, journal, and ledger of Mr. Marie.

The defendants offered the checkbooks for the purpose of showing that they contained entries with respect to 200 shares of Retsoff, and not 400 shares, and contained no other entries of transactions with the plaintiff; and the accountant testified that he had also examined the journal and ledger, and thereafter said that he did not find in the "books" any entries other than as to the 200 shares, and on cross examination he testified that there were no such entries in the checkbooks, journal, or ledger. As argued by the appellant, entries in the books of the testator, and the testimony as to absence of entries, cannot be claimed to be admissible, unless such entries are considered as part of the res gestæ involved in the action, or come under the head of declarations against interest. Entries are not admissible as part of the res gestæ, even though made at the time of a given transaction by one of the parties in his own books, when made, as here, without the knowledge of the other party; and, moreover, the res gestæ here is the alleged delivery of the 200 shares in dispute, and the delivery of the other stocks and bonds, whereas the entries related to 200 shares not in dispute. And we think that the further contention of the appellant is also sound—that these entries cannot be regarded as admissible upon the ground that they were declarations against interest. Here, again, the 200 shares mentioned in the checkbooks were not the shares and bonds in dispute; and, as said in Brennan v. Hall, 131 N. Y. 167, 29 N. E. 1010, "to bring the declarations and entries in such a case within the exception, the fundamental requirement is that they should at the time be against the interests of the person making them." Upon this ground alone, therefore, we think it was error to admit the books and the testimony relating to them, and that this error is of such a serious nature as to require a reversal of the judgment.

The respondents contend that the error in admitting the books and the testimony of the accountant can only be regarded as bearing upon the first cause of action. In this, however, we think the respondents are in error, because, even though there were no entries to be found in the books which related to the securities mentioned in the second and third causes of action, the proof that there were no such entries therein gave rise to the inference that Mr. Marie had no such transactions with the plaintiff. It is not easy to distinguish between the probative force of this negative evidence, based upon no entries in the books, and positive entries therein made. The entries in the books were incompetent as to all three causes of action, and, even though the respondents were right—that, so far as positive evidence of actual entries is concerned, none was introduced that bore upon the second and third causes of action—still the examination of the accountant, who was allowed to testify that there were no entries in Mr. Marie's books relating to the transactions in dispute, which testimony was introduced undoubtedly for the purpose of having the jury infer that there never were any such transactions, had a necessary bearing upon the questions which were

for the determination of the jury. Nor does the fact that most of the testimony as to the journal and ledger came out in cross-examination help the respondents, for the checkbooks had already been admitted, and testimony given that they contained no reference to the plaintiff, save as to the 200 shares, and the journal and ledger were referred to as having also been examined, and thereafter the accountant testified with respect to the second cause of action that there was nothing "in the books" by Mr. Marie referring to the plaintiff and the Amalgamated Copper. Even though the checkbooks only were thus referred to, the effect of the testimony, in view of the previous mention of the other books, was to create an inference that nowhere was there any entry, save as to the 200 shares of Retsoff.

For the error in the admission of the books and the testimony relating to them, therefore, we think that as to all three causes of action the judgment and order should be reversed and a new trial ordered, with costs to the appellant to abide the event. All concur.