### LINDEN v. THIERIOT et al.

(Supreme Court, Appellate Division, First Department. June 16, 1905.)

1. DECEDENTS' ESTATES—CLAIMS—ESTABLISHMENT—EVIDENCE—SUFFICIENCY.
　　Claims against the estates of deceased persons must be established by very satisfactory evidence.
　　[Ed. Note.—For cases in point, see vol. 22, Cent. Dig. Executors and Administrators, §§ 901, 903.]

2. SAME.
　　In a proceeding to enforce claims against the estate of a deceased person, evidence examined, and *held* insufficient to sustain a verdict against the estate.
　　O'Brien, J., dissenting.

Appeal from Trial Term, New York County.

Action by Emily Linden against Ferdinand M. Thieriot and others, as executors of the estate of Peter Marie, deceased. From a judgment in favor of plaintiff, defendants appeal. Reversed.

Argued before O'BRIEN, P. J., and HATCH, McLAUGHLIN, and INGRAHAM, JJ.

Charles E. Hughes, for appellants.
L. Laflin Kellogg, for respondent.

HATCH, J. Upon a former appeal in this case (Linden v. Thieriot, 96 App. Div. 256, 89 N. Y. Supp. 273), a judgment in favor of defendants was reversed for errors in the reception of evidence committed upon the trial. The nature of the causes of action, and the evidence adduced in support of the same, are quite fully commented upon in the opinion delivered in that case. The court therein stated, after a consideration of the testimony, that enough appeared to require a submission of the causes of action to the jury. This conclusion, however, was reached with much hesitation. The court concluded that a verdict for the defendants would not have been disturbed upon the evidence. No opinion was expressed by the court as to whether the evidence was sufficient to sustain a recovery by the plaintiff upon the evidence as adduced. As no opinion was necessary upon such subject for a disposition of the appeal, none was expressed. The rule governing actions of this·character is stated in Van Slooten v. Wheeler, 140 N. Y. 624, 35 N. E. 583. It requires, as matter of public policy, that claims·against the estates of deceased persons must be established by very satisfactory evi-

dence. This rule is again reiterated in Matter of Marcellus, 165 N. Y. 70, 58 N. E. 796, and in many other cases.

So far as the 200 shares of Retsof mining stock is concerned, the case is not strengthened in a single aspect beyond that appearing upon the former trial. It is fully commented upon in the former opinion, and the details are therefore not required to be restated. The evidence thus analyzed shows that the existence of the 400 shares of Retsof was not traced after 1895, when the husband of the plaintiff testifies that he saw that number of shares in the possession of the plaintiff. But that 400 shares were ever delivered to the deceased is not made to appear, and he is not shown ever to have been in the possession of more than 200 shares, and for those 200 shares he fully accounted to the plaintiff. The same is also true of the 100 shares of Amalgamated Copper. The evidence is the same as it was upon the former trial, save in one respect. Mrs. Smith, a sister of the plaintiff, was called, and testified that upon one occasion in the fall of 1902 the plaintiff was finding fault with the deceased about this investment. In reply thereto, the witness stated, Mr. Marie said: "Well, even if you have to sell, your 200 shares will pay for your 100. I will protect you;" and, turning to the witness, he said: "Of course, I, as I have before, will protect you from any loss in the matter. You have no cause to grumble." It is conceded that the deceased did protect the plaintiff as to 100 shares of copper, and made up the balance of her dividends thereon, which he paid to her by check, and with respect to which there was some correspondence. She received the moneys thus paid, and there is not in the case a suggestion that she was at that time entitled to more than she received. Had she held 200 shares, in order for the deceased to have fulfilled the obligation which he evidently undertook, his contribution should have been double the amount that it was. While there was great intimacy between the parties, frequent interviews, and much correspondence, not a suggestion is found therein of conversation or writing that the deceased was obligated to make good any loss of any character upon more than 100 shares. It would be remarkable that he should provide for the reduction in dividends and loss sustained upon 100 shares, and not make it upon 200, or make any comment upon his failure so to do, if he were so liable. The proof is clear and specific in recognition of his obligation and his discharge of the same, and there is not the slightest proof to show that any complaint was ever made by the plaintiff that he had not fulfilled his obligation. While there is much of explanation many times by the deceased, there is not a suggestion from him that he was obligated to do more than he did. The conversation testified to by Mrs. Smith is in entire harmony with the real understanding existing between the parties—that the deceased should protect the plaintiff. The only difference is that 200 shares of the stock was mentioned. But as only 100 shares appeared or were considered in any of the dealings had between the parties, such declaration, testified to have been made in the course of a casual conversation in which 200 shares were named, is quite insufficient as a basis upon which to found an obligation against the

estate of a deceased person, in view of the admitted facts of this case and their open course of dealing. We conclude, therefore, that upon the subject of the stocks the verdict is against the weight of the evidence.

So far as the bonds mentioned in the third cause of action are concerned, there is no written evidence to show that these were ever delivered by the plaintiff to the deceased, or that he used the proceeds of the same to purchase the 20,000 shares of the Inez Gold Mining Company stock. The claim is that there were delivered to the deceased six Chicago gas bonds and eight Retsof mining bonds, for the proceeds of which the deceased never accounted. By testimony of the plaintiff's husband, which is substantially the only evidence relied upon to sustain the verdict, it appears that this transaction of the delivery of the bonds was in 1897, or prior to September 26, 1898. Upon this subject testimony was given tending to show that the delivery of these bonds created an obligation upon the part of the deceased in about the sum of $15,000; that in May or June, 1898, the deceased went to Europe, and, before going, delivered to the plaintiff a note for $15,000, signed by him, payable at his residence, but only in event of his death, and that this note was witnessed by Leon Marie, a nephew; that upon his return this note was surrendered to the deceased upon the understanding that he would get 20,000 shares of stock for the plaintiff in the exchange. The proof is the same respecting the delivery of both kinds of bonds, as to the time and the arrangement. Upon this subject, however, the plaintiff's husband testified that the coupons from both the Chicago Gas and the Retsof bonds were deposited with the Knickerbocker Trust Company for collection on account of the plaintiff, and that they continued so to be deposited with the Knickerbocker Trust Company down to the time of the death of the deceased. The claim upon the part of the plaintiff is that the bonds were sold prior to September, 1898, while the testimony of the husband is that the coupons upon the bonds were collected for the benefit of the plaintiff down to the death of the testator, which occurred on the 15th day of January, 1903. The evidence, therefore, instead of establishing the transaction as claimed, shows that the bonds remained the property of the plaintiff at the time of the testator's death, and that she received the moneys represented by the coupons attached thereto. In addition to this, it was testified by Leon Marie that he never witnessed any note for $15,000, or any other, executed by the deceased. The butler of the latter is produced, who testifies positively, and from memoranda which he made at the time, that the deceased did not go to Europe in 1898, but, on the contrary, remained in this country; and the butler specified the places of sojourn of the deceased during the time it was claimed by the plaintiff that he was in Europe. Manifestly the testimony in support of this cause of action is against the weight of the testimony, if the cause of action be not deemed to be disproved by the plaintiff herself.

The court submitted the case to the jury upon the theory of a preponderance of evidence in the establishment of the plaintiff's

claim, as though the case were one between living parties. There was not a suggestion that the law required the establishment of such claims by clear and convincing proof, so that the jury did not have before them upon the submission the rule that the plaintiff's claim was to "be established by very satisfactory evidence," which the law requires. It is not needful that we further discuss the testimony and inferences which arise upon the whole case.

We reach the conclusion that the verdict was against the weight of the evidence, from which it follows that the judgment and order should be reversed, and a new trial granted, with costs to the appellants to abide the event. All concur, except O'BRIEN, P. J., who dissents.