Seiden v BOP SE LLC (2025 NY Slip Op 51206(U))

[*1]

Seiden v BOP SE LLC

2025 NY Slip Op 51206(U)

Decided on July 29, 2025

Supreme Court, New York County

Ramseur, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on July 29, 2025
Supreme Court, New York County

Jeffrey Seiden, Plaintiff,

against
BOP SE LLC, TISHMAN CONSTRUCTION CORPORATION OF NEW YORK, Defendant.

Index No. 160062/2022

Seiden: Helina Manesis, Esq. of Zaremba Brown PLLC
BOP: Keith Grace, Esq., Jason Meneses, Esq. of Cornell Grace PC

Dakota D. Ramseur, J.

The following e-filed documents, listed by NYSCEF document number (Motion 002) 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 87 were read on this motion to/for JUDGMENT - SUMMARY.
The following e-filed documents, listed by NYSCEF document number (Motion 003) 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 64, 65, 66, 67, 68, 69, 70, 71, 72, 73, 74, 75, 76, 77, 78, 79, 80, 81, 82, 83, 84, 85, 86 were read on this motion to/for JUDGMENT - SUMMARY.
In November 2022, plaintiff Jeffrey Seiden commenced this Labor Law §§ 200, 240 (1) and 241 (6) action for injuries he sustained while working at a construction site located at 2 Manhattan West, New York, New York. Plaintiff asserts these causes of action against the site's owner—BOP SE LLC (hereinafter, "BOP")—and its general contractor—Tishman Construction Corporation of New York ("Tishman;" together, "defendants"). In motion sequence 002, plaintiff moves for summary judgment on his Labor Law §§ 240 (1) and 241 (6) causes of action; in motion sequence 003, defendants move for summary judgment dismissing plaintiff's Labor Law §§ 200 and 241(6) claims. Each motion is opposed in their entirety. Herein, the Court consolidates the two motions for resolution.
BACKGROUND
On November 10, 2022, plaintiff's employer—non-party Manhattan Painting and Decorating—directed him to finish painting staircase C, floors 47 through 57. (NYSCEF doc. no. 34 at 24, Seiden dep. transcript.) While working in between the 53rd and 54th floor, plaintiff testified that an unsecured handrail fell and struck his knee or lower leg, which caused him to fall backwards toward the landing between the two floors. (Id. at 43.) Central to the parties' two motions is whether the handrail was, in fact, unsecured at the time of accident. Defendants attach the affidavit of Robert Minogue, a foreman who was employed by non-party Orange County Ironworks, who avers that he and his crew were responsible for installing handrails throughout staircase C but were unable to do so with the instant handrail because the sheetrock had not been put in place yet. (NYSCEF doc. no. 50 at ¶4, Minogue affidavit.) In storing the handrail for later installation, he testified that he secured it resting on a guardrail/inner handrail using two metal wire ties, which were sufficient to ensure that it did not move or slip, and that the only way it could have come loose is if someone physically untied the wires. (Id. at ¶¶ 6,12, 13.) They also attach an affidavit from Joseph Kulla, Manhattan Painting's site foreman, who avers that he went to the 53rd floor immediately after the incident, whereupon Seiden advised him that the hose to the paint spray machine he was using caught onto the handrail and pulled it down. (NYSCEF doc. no. 49 at ¶7, Kulla affidavit.) Lastly, at no point did defendants' site safety manager, Richard Tiberi, admit—as plaintiff argues—that their subcontractor had failed to secure the handrail to the guardrail. (See NYSCEF doc. no. 35 at 54, Tiberi dep. transcript.)
By contrast, from plaintiff's perspective, although he admits that he did not observe the condition of the handrail pre-accident and could not identify what precisely triggered it to fall (NYSCEF doc. no. 34 at 45-46), he nonetheless suggests that the very fact it fell demonstrates that it was unsecured. Further, in his view, the condition of the handrail being unsecured is corroborated by the lack of evidence from the scene—whether in photographic form, incident reports, or deposition testimony—of any rope or wire ties post-accident that Minogue might have used to tie the handrail to the guardrail. (See NYSCEF doc. no. 35 at 91, Tiberi dep. transcript [explaining that, upon arrival shortly after the incident occurred, he did not see any wire tie or rope that would have indicated it was secured].)
DISCUSSION
Under CPLR 3212 (b), a proponent moving for a summary judgment motion must make a prima facie showing of entitlement to judgment as a matter of law, producing sufficient evidence to eliminate any material issues of fact from the case. (Brandy B. v Eden Cent. School Dist., 15 NY3d 297, 302 [2010]; Kesselman v. Lever House Rest., 29 AD3d 302 [1st Dept 2006].) Once a defendant establishes their entitlement, the burden shifts to the plaintiff to raise a triable issue of fact. (Zuckerman v City of New York, 49 NY2d 557, 562 [1980].) Since summary judgment is an extreme remedy, the Court must draw all reasonable inferences in favor of the non-moving party. (Vega v Restani Constr. Corp., 18 NY3d 499, 503 [2012].) Where there is doubt as to the existence of material facts or where different conclusions can reasonably be drawn from the evidence, summary judgment should be denied. (Udoh v Inwood Gardens, Inc., 70 AD3d 563, 565 [1st Dept 2010].)
Plaintiff's Motion for Summary Judgment: Motion Sequence 002
[*2]Plaintiff's Labor Law § 240 (1) Claim
Before proceeding to whether Labor Law §240 (1) applies to these factual circumstances, plaintiff contends that the Court cannot consider the Minogue affidavit in opposition to his motion as defendants did not disclose him as a witness at any point in response to his discovery demands. More specifically, he argues that Minogue was under defense counsel's control by virtue of an insurance policy that would have, in his view, required defendants to represent Orange County Ironworks. This argument, however, is left unsupported as he fails to cite a specific CPLR provision that opposing counsel violated, identify a specific demand to which counsel failed to sufficiently respond, or pinpoint the precise contractual provision that would place the witness under counsel's control. (See NYSCEF doc. no. 87 at ¶15, plaintiff reply memo of law.) As such, the Court finds it appropriate to consider as part of defendants' opposition.
Labor Law § 240 (1) provides, in relevant part:
"All contractors and owners and their agents . . . in the erection, demolition, repairing, altering, painting, cleaning, or pointing of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed." (Labor Law § 240 [1].)
Because its aim is to protect workers by placing ultimate responsibility for safety practices on the owner and contractors instead of workers, who are scarcely in a position to protect themselves from accident (see Rocovich v Consolidated Edison Co., 78 NY2d 509, 513 [1991]), the statute imposes a nondelegable duty on owners, contractors, and their agents to provide "devices which shall be so constructed, placed and operated as to give proper protection to those individuals performing the work." (Quiroz v Memorial Hosp. for Cancer & Allied Diseases, 202 AD3d 601, 603 [1st Dept 2022] [internal citation removed].) Section 240 (1) imposes absolute liability on such entities, but the statute is limited to a narrow class of dangers: only those "special hazards" presenting "elevation-related risks." (Nicometi v Vineyards of Fredonia, LLC, 25 NY3d 90, 96-97 [2015].) Thus, to prevail on a motion for summary judgment in a "falling object" case like the one here, a plaintiff must demonstrate that (1) the object required securing for the purposes of the work being performed (Fabrizi v 1095 Ave. of the Ams., L.L.C., 22 NY3d 658, 662-663 [2014]), and (2) the object fell because of the absence or inadequacy of a safety device to protect against a risk arising from a physically significant elevation differential (Narducci v Manhasset Bay Assocs., 96 AD 259, 268 [2001] [emphasis original]; O'Brien v Port Auth. of N.Y & N.J., 29 NY3d 27, 33 [2017]; Sawczyszyn v New York Univ., 158 AD3d 510, 511 [1st Dept 2018]).
Here, plaintiff has undoubtedly shown—and defendants do not dispute—that the handrail required some sort of securing.[FN1]
Tiberi testified that ideally the handrail would not be stored in [*3]the stairwell but if one was and it was placed on top of the guardrail/inner handrail, it required securing with rope or a wire tie at the top and bottom to prevent it from dislodging when someone put their hand on it. (NYSCEF doc. no. 35 at 54.) He further explained that, had he known someone had failed to secure the handrail, he would consider it an unsafe condition and would send a photo to the foreman. (Id.)
The Court further finds that plaintiff, in testifying to the manner in which he was injured, has demonstrated that the handrail fell due to the absence or inadequacy of a safety device to secure it to the guardrail. (See Gallegos v Bridge Land Vestry, LLC, 188 AD3d 566, 566 [1st Dept 2020] [holding that the plaintiff was not required to demonstrate how a stone slab fell since either the sling itself or the manner in which it was secured was inadequate].) While defendants contend that plaintiff's only evidence is his "subjective, self-serving testimony," the fact that his accident was otherwise unwitnessed does not bar summary judgment in plaintiff's favor so long as nothing in the record contradicts plaintiff's version of events or raises issues as to his credibility. (See Gutierrez v Turner Towers Tenants Corp., 202 AD3d 437, 438 [1st Dept. 2022], citing Serrano v TED Gen. Contr., 157 AD3d 474, 475 [1st Dept 2018] ["That no other witness other than plaintiff testified as to the occurrence of the accident does not bar judgment in his favor," where nothing contradicted his version and no issues were raised as to credibility].)
Of course, defendants contend that the Kulla and Minogue affidavits contradict plaintiff's version of events and create issues of fact. As discussed above, Kulla avers that plaintiff told him immediately after his accident that the handrail had fallen when it became entangled with the hose from the spray paint machine that plaintiff was using (NYSCEF doc. no 49 at ¶ 7) and Minogue testified that "the wire ties . . . were adequate to keep the handrail from moving until it was ready to be installed" (NYSCEF doc. no. 50). Yet, even if the Court were to assume that the handrail fell as a consequence of plaintiff's choice to use the hose several floors away from the spray paint machine, this presupposes the handrail being in the unsecured condition that plaintiff testified to; in other words, it establishes issues of fact as to whether plaintiff was comparatively negligent without eliminating defendants' alleged §240 (1) violation as a proximate cause of plaintiff's injuries. As such, Kulla's affidavit cannot be grounds upon which the Court denies plaintiff summary judgment. (See Rodriguez v City of New York, 31 NY3d 312, 323 [2018]; Bialucha v City of New York, [1st Dept 2023] [finding that plaintiff's conduct leading up to accident would only have amounted to comparative negligence, "which is not a defense to Labor Law §240 (1) claim"]; Zuluaga v PPC Constr., LLC, 45 AD3d 479, 480 [1st Dept 2007] [finding partial summary judgment properly granted where no evidence existed that plaintiff's conduct was the sole proximate cause of the accident].)
At the same time, defendants advance a second, conflicting theory that the handrail [*4]simply could not have fallen, unless the wire ties were consciously undone, because Minogue adequately secured it. Gallegos addresses this very point: regardless of whether Minogue believed he secured the handrail, plaintiff is not required to show how it became unsecured because either the wires were inadequate themselves or the manner in which they were placed was inadequate. (Gallegos, 188 AD3d at 566.) Even so, Minogue's affidavit lacks critical detail to the point that it is entirely conclusory. He does not specify when his team allegedly secured the handrail to the guardrail, whether days or weeks before the accident, and, thus, cannot opine on its condition immediately before the accident. Nor does he describe the manner in which he tied the handrail to the guardrail, only that two wire ties—of an unknown type—were involved. Without disclosing additional details, there is nothing to corroborate his assertion that two wires were sufficient to keep the handrail from coming loose for the length of time needed to add the sheet rock for installation.
Moreover, neither the Incident Report nor any of the photos taken in the immediate aftermath of the fall report the presence of wire ties in the vicinity of the fall as would be observed if the handrail had been secured. (See NYSCEF doc. no. 52, incident report; NYSCEF doc. no. 33, photos.) That leaves the possibility of them being physically untied—presumably by plaintiff, but not inconceivably by another worker: yet there exists no evidence for this theory and no reason to doubt plaintiff's credibility. Lastly, because defendants' expert opinion merely consists of bare legal conclusions based entirely on Minogue's affidavit, it is of no evidentiary value.[FN2]
(See Russo v Feder, 301 AD2d 63, 68 [1st Dept 2002] ["Expert witness should not . . . offer opinion as to the legal obligations of parties; that is an issue to be determined by the trial court. Expert opinion as to a legal conclusion is impermissible"]; Episcopal Diocese of Long Island v St. Matthias Nondenominational Ministries, Inc., 157 AD3d 769. 771 [2d Dept 2018].)
Further, given that plaintiff provided unrefuted testimony that the handrail weighed approximately two-hundred pounds [FN3]
and was left unsecured on a staircase, itself with its own elevation differential, the Court finds that plaintiff has demonstrated that his injury arose out of a physically significant elevation risk. In opposition, defendants contend that there is an issue of fact as to whether the handrail falling was the type of elevation-related risk that §240 (1) protects against. They principally rely upon Melo v Consolidated Edison Co. of NY (92 NY2d 909 [*5][1998]), Gallupa v Leon D. DeMatteis Const. Corp. (121 AD3d 416 [1st Dept 2014]), and Padilla v Touro College (204 AD3d 415 [1st Dept 2022]). Yet these cases do not concern analogous circumstances to those described by plaintiff. In Melo, the steel plate that caused plaintiff's injuries was "resting on the ground or hovering slightly above the ground. The steel plate was not elevated above the worksite." (Melo, 92 NY2d at 911.) In Gallupa, the plaintiff "did not contend that the block [that fell and struck him] was inadequately secured" but rather that his injuries were caused by defendants' failure to provide an adequate safety device to hold a plastic tarp cover in place. (Gualpa, 121 AD3d at 418.) Unlike here, however, the First Department noted that the plastic tarp was not an object that needed to be secured and there was no indication that it caused the alleged injuries. (Id.) And in Padilla, the First Department denied the plaintiff summary judgment where "it cannot be determined on this record whether plaintiff's injuries were proximately caused by the lack of a safety device." (Padilla, 204 AD3d at 416.) None of these cases align with a plaintiff who alleges that a 200-plus pound handrail was left unsecured and resting on top of another inner guardrail within a staircase. Accordingly, since plaintiff has demonstrated that his injuries were the direct consequences of the application of the force of gravity, the Court finds that he is entitled to summary judgment on liability on his §240 (1) claim.
Plaintiff's Labor Law §241 (6) Claim
Labor Law § 241 (6) requires owners and contractors to provide adequate safety protection for workers and to comply with the specific safety rules and regulations promulgated by the Commissioner of the Department of Labor. (Misicki v Caradonna, 12 NY3d 511, 515 [2009].) To support a claim under this provision, a plaintiff must establish that the defendant violated an Industrial Code provision that sets forth specific, applicable safety standards and that his or her injuries were proximately caused by said violation. (Doxey v Freeport Union Free Sch. Dist., 115 AD3d 907 [2d Dept 2014]; Licata v AB Green Gansevoort, LLC, 158 AD3d 487, 488 [1st Dept 2018].) Here, plaintiff bases liability under §241 (6) on defendants' Industrial Code Section 23-2.1 (a) (1). This rule provides, in pertinent part, that: 
All building materials shall be stored in a safe and orderly manner. Material piles shall be stable under all conditions and so located that they do not obstruct any passageway, walkway, stairway or other thoroughfare. (12 NYCRR § 23-2.1.)
Defendants do not contest that this provision of the Industrial Code may serve as the predicate for liability on a §241 (6) claim. (See McGarrell v. B. Bros. Broadway Realty LLC, 2016 NY Misc. LEXIS 269 [NY County Sup. Ct. 2016].) Here, plaintiff has made a prima facie showing that the handrail was not adequately secured, which clearly violates this Industrial Code section, and defendants have failed to demonstrated issues of fact as to its condition at the time of plaintiff's accident. Defendants rely upon Flynn v 835 6th Ave. Maste L.P. (107 AD3d 614, 614-615 [1st Dept 2013]) but plaintiff's testimony is not vague or inconsistent. Nor is it "speculative" or "conjecture" that the handrail was unsecured since he testified that it, in fact, fell. Accordingly, for the same reasons as with plaintiff's §240 (1) claim, the Court grants plaintiff summary judgment as to liability on this claim.
Defendants' Motion for Summary Judgment: Motion Sequence 003
Because plaintiff does not oppose summary judgment on his §241 (4) claims that are [*6]predicated on Industrial Code §§ 23-1.7, 23-1.19, 23-2.6, and 23-2.7, defendants' motion is granted as to these alleged violations. Further, as the Court has addressed §241 (6) in the context of Industrial Code 23-2.1 (a)(1) and granted plaintiff summary judgment, this portion of defendants' summary judgment motion is denied.
Plaintiff's §200 Claim
Defendants are not entitled to dismissal of plaintiff's §200 negligence claim. Labor Law § 200 is a codification of the common-law duty imposed upon an owner or general contractor to provide construction site workers with a safe place to work. (Villanueva v 114 Fifth Ave. Assoc. LLC, 162 AD3d 404, 405-406 [1st Dept 2018].) Claims for personal injury under § 200 fall into two broad categories: (1) those arising from an alleged defect or dangerous condition existing on the premises and (2) those arising from the manner in which the work was performed. (Cappabianca v Skanska USA Bldg. Inc., 99 AD3d 139, 143-144 [1st Dept 2012].) For the former category, liability attaches if the owner or general contractor created the dangerous condition or had actual or constructive notice; for the latter category, where the injury was caused by the "manner and means" (or "means and methods") of the work, the owner or general contractor is liable if it actually exercised supervisory control over the injury-producing work. (Id., citing Foley v Consolidated Edison Co. of NY, Inc., 84 AD3d 476, 477 [1st Dept 2011]; see also Cook v Orchard Park Estates, Inc., 73 AD3d 1263, 1264 [3d Dept 2010] ["If an injury is caused by the manner in which a subcontractor performs its work, an owner or general contractor will be liable only if it had the authority to control the activity bringing about the injury"].)
Defendants assert that plaintiff's cause of action is based on the means-and-method theory. As plaintiff argues, however, in this case, there is nothing in his complaint that rules out liability against defendants based upon them having notice of a dangerous condition and failing to rectify it within a reasonable time. Thus, on this second theory, to establish entitlement to summary judgment, defendants must establish prima facie that they neither created the alleged dangerous condition nor had actual and constructive notice of it. (See Rooney v. George Hardy St. Francis Apts., LLC, 181 AD3d 493,494 [1st Dept 2020]; Mendoza v. Highpoint Assoc., IX, LLC., 83 AD3d 1, 9 [1st Dept. 2011].) Here, defendants have attached no evidence—such as inspection logs or other testimony—that meets this burden. While they are correct that plaintiff is not entitled to summary judgment because he has not demonstrated they had actual notice of a dangerous condition or, for constructive notice purposes, that the unsecured handrail was visible and apparent for a sufficient length of time to allow them to rectify it, this alone does not demonstrate their entitlement to summary judgment. Accordingly, this branch of defendants' summary judgment motion must be denied.
Accordingly, for the foregoing reasons, it is hereby
ORDERED that plaintiff Jeffrey Seiden's motion for summary judgment pursuant to CPLR 3212 as to liability on his Labor Law §240 (1) claim is granted; and it is further
ORDERED that his motion for summary judgment pursuant to CPLR 3212 as to liability on his Labor Law § 241 (6) claim, as premised on 12 NYCRR § 23-2.1, is granted; and it is further
ORDERED that the branch of defendants' motion for summary judgment pursuant to CPLR 3212 as to plaintiff's Labor Law § 241 (6) claim is granted to the extent that plaintiff's claim is premised on Industrial Code §§ 23-1.7, 23-1.19, 23-2.6, and 23-2.7, but otherwise [*7]denied; and it is further
ORDERED that counsel for plaintiff shall serve a copy of this order, along with notice of entry, on all parties within twenty (20) days of entry.
This constitutes the Decision and Order of the Court.
DATE 7/29/2025
DAKOTA D. RAMSEUR, J.S.C.

Footnotes

Footnote 1:Defendants maintain that they do not dispute whether the handrail should have been secured. (See NYSCEF doc. no. 41 at 14.) Nonetheless, in citing Buckley v. Columbia Grammar and Preparatory (44 AD3d 263, 268 [1st Dept. 2007]) and Jordan v. City of New York (126 AD3d 619 [1st Dept. 2015]) for the proposition that § 240 (1) only protects against foreseeable elevation risks, they argue that the handrail did not constitute a foreseeable risk. Thus, it appears, in some sense they do argue that the handrail did not require securing. To the extent that this point is in dispute, then, defendants' position fails to account for Tiberi's testimony, who noted that it posed a generalized falling risk to workers in the area who might put their hands on it and he would flag an unsecured handrail as a dangerous condition that needed to be fixed. (See NYSCEF doc. no. 35 at 54-56.)

Footnote 2:It is not undisputed, as the expert insists, that proper safety devices were provided and plaintiff's direct testimony contradicts Minogue's "unrebutted" affidavit. In concluding that section 240 (1) was not violated, defendants' expert simply chooses to credit Minogue's affidavit—sworn to two years after the accident—over plaintiff's deposition testimony without any expert input whatsoever. The expert also notes that "the metal wire ties, as described in the sworn affidavit of Mr. Minogue, were safety devices that were constructed and placed as to give proper protection to the Plaintiff in this case." Yet, to the Court's point that the Minogue affidavit is entirely conclusory, it is silent as to where and how the ties were placed to secure the handrail.

Footnote 3:Defendants describe plaintiff's estimation of the handrail's weight as pure speculation. However, they fail to proffer evidence of their own that this figure is inaccurate, which is notable given that Minogue could have provided his own estimation. That plaintiff's estimation is the only figure in the record is particularly significant because defendants have not cited caselaw that suggests plaintiff is required to corroborate his personal knowledge with an expert's opinion.